## Botts, &c. *vs.* Williams.

Case 28.

APPEAL FROM GREENUP CIRCUIT.

ORD. PBT.

1. A private person may lawfully arrest a felon convicted in the state, and convey him to an officer without a warrant, without incurring any responsibility, using no more delay in the detention than is necessary.
2. A plea justifying an arrest without warrant, should aver that the plaintiff had committed a felony. (2 *Greenleaf, sec.* 100; *Wheaton's Selwyn*, 2 *vol.*, 126.)
3. To justify an arrest by a private person, without warrant, it is necessary that the offense should have been committed within the jurisdiction of the government where the arrest is made.
4. To authorize the removal of one charged with the commission of a felony in another state, a copy of the indictment found against the accused must be produced, or an affidavit of guilt made out by the prosecutor, and the warrant of the governor predicated upon the requisition of the governor of the state where the offense is alledged to have been committed.
5. The admissions of a plaintiff that he had been guilty of a felony in another state, are competent evidence in a suit by him against individuals for damages for arresting him and conveying him to that state for trial—in mitigation of damages even under the plea of not guilty.
6. It is error for the court in giving instructions to a jury to characterize the conduct of the parties by terms calculated to influence the jury in their assessment of damages, or to disparage testimony which has been permitted to go to the jury.

[The facts material to a correct understanding of the law settled by the court are stated in its opinion.—REP.]

*W. C. Ireland* for appellants—

1. The appellants complain that they were prejudiced on the trial by the decisions of the court.   1. In sustaining the demurrer to their plea.   2. In rejecting evidence offered by them.   3. In giving improper instructions to the jury.   4. In refusing a new trial.   It is indispensibly necessary that the laws of the country shall be technically pursued in the arrest and removal of one who has committed a felony in another state to that state for trial; or has a private individual the right to arrest such felon and surrender him to the officers of justice where the offense was committed?   Does the existence of such a law deprive the private citizen of the right to make the arrest and removal?   It is an important duty devolving on every good citizen to aid in the execution of the penal laws, and it is presumed that the constitution and laws on that subject were designed more effectually to secure that co-operation on the part of the citizen than to circumscribe his power as a citizen.

2. The court erred in refusing to permit the depositions of sundry witnesses to be read to the jury; the purport of which was to prove the plaintiff a man of notoriously bad character, a fugitive from justice, having forfeited his recognizance, and that he had himself given currency to the rumors that induced his arrest, and other like facts, not as proving justification of the arrest, but in mitigation of damages.

3. The instructions of the court were improper and erroneous.   The first assumes that the trespass was of "enormity and magnitude."   It was the province of the jury to determine whether it was so or not, and for the court to tell the jury it was such, was improper.   This court should not assume any fact involved, on which it is the province of the jury to decide, as proved, and base an instruction on that assumption.   The jury should decide facts uninfluenced by judicial suggestion.

4. The third instruction was misleading, and calculated to induce the jury to think that they were bound to find all the defendants alike guilty, by using the terms "and are liable to damages as though they were the ones who seized, or the one who tied the rope."

5. There is no proof that Jacob Kibby had anything whatever to do with the arrest, and there should have been a new trial.

*B. Peters* on the same side—

1. The plaintiff was the cause of his arrest by his own voluntary confession; and the gentlemen who arrested him were prompted by no ill will towards the plaintiff, but only by a sense of their duty as good citizens.

2. The judge indicated, by his instructions to the jury, too strongly their power to give smart money to the plaintiff for his injured feelings and wounded pride. It surely should have been allowed the defendants to prove that the plaintiff had no character to loose, or pride to wound.

3. Instruction No. 2 should not have been given. No principle has oftener been misapplied than that which the court attempted to apply. That the statement of the party in the presence of the witness alone is the weakest of all testimony known to the law. Light and unguarded expressions, made in unguarded moments, should be received with caution, and regarded as the weakest evidence; but how different is the case where a man deliberately, and for his own purpose, takes another aside and makes his own communication with the same deliberation and solemnity as he would write a note or deed, and the witness give all due attention to the communication. Is not this evidence of a high character?

There is no evidence against Kibby; he took no part in the arrest; he let plaintiff have his horse to ride, and for that he has to pay $333⅓. Other points have been discussed by adjunct counsel.

*James Harlan* for appellee—

Argued—1. That the plea of the defendants was clearly insufficient, and the court did not err in sustaining the demurrer to it. To justify an arrest by a private individual, without warrant, the person arrested must have been guilty of a felony within the state, and the plea should so aver. But even the committing a felony in another state will not justify an arrest in this state without a warrant. The statutes of Kentucky point out the course to be pursued, which was not done in this case. The defendants filed and relied solely on the plea of not guilty in their defense.

2. The appellants offered to read the record of a suit brought by the plaintiff, Ward, for slander in charging him with being a counterfeiter, in which Ward had plead that the charge was true, and Williams, the plaintiff, had dismissed his suit. The court excluded this record. There was no error in this. It was not calculated to illustrate the issue joined in this suit. The defendants also offered to read certain depositions in regard to a prosecution against *Williams, the plaintiff, in Scioto county, Ohio,* in 1840. These were excluded also. The record was the best evidence, and secondary evidence was properly excluded. The defendants offered to prove that the plaintiff's character was bad, and that he had the general reputation of a counterfeiter. Could this illustrate the fact of whether the defendants were guilty of the assault and battery, and false imprisonment complained of? The character of the parties, in a civil cause, is not in issue, unless put in issue by appropriate pleadings. (3 *Bibb*, 195; *Peake's Evidence*, 6 )

It is not the business of counsel to defend the character of the party he represents unless it be involved. The general character of Williams may be bad or it may be good, be it good or bad it is not in issue in this case. He has the right to the protection of the law; and as a citizen has the right to claim to

be dealt with according to law.   He has not been so dealt with, but kidnapped and forcibly carried into another state upon suspicion, upon mere rumor that he had committed a felony, prompted by the prospect of gain.

The instructions asked by defendants were given, and the jury dealt leniently with the defendants, when it is understood that he was confined, closely guarded, and suffered by the exposure.

The verdict should not be disturbed.

Judge STITES delivered the opinion of the court:

January 21.

This suit was brought in 1849, by Williams against appellants, for trespass and false imprisonment, in forcibly seizing, binding, and transporting him, against his will, from Carter county in this state, to the state of Ohio.

Appellants first pleaded, in substance, that the plaintiff, below, had before that time committed a felony in Ohio, and was, at the time of the alledged seizure and trespass, a fugitive from justice seeking to avoid the punishment due in his offense in Ohio; that the authorities of that state had offered a reward of $2,000 for his apprehension; and that they, as good citizens, under an honest and reasonable belief, founded upon sufficient grounds, that he was guilty of felony in Ohio, and a fugitive from justice, had taken the plaintiff into custody, and delivered him to the officers of Ohio in that state, using no more force or delay than was necessary to effect that purpose.   This plea being adjudged insufficient on demurrer, a plea of not guilty was then filed, a trial had, and a several verdict and judgment rendered for the appellee of $333 33⅓ against each of the six defendants, amounting in the aggregate to $2,000.

Botts, Ratcliffe, and Jacob Kibby, three of the defendants, moved for a new trial, upon three grounds, viz: 1st. That the court erred in sustaining the demurrer to the special plea.   2nd. In rejecting important evidence offered by the defendants.   And 3rd.

BOTTS, &c.
vs.
WILLIAMS.

In instructing the jury improperly. Their motion was overruled, and they have brought the case up, and rely upon the same grounds for reversal.

The first point involves the important and interesting inquiry as to the extent a private person may go in apprehending, in this state, a fugitive from justice, who has fled hither from another state; and whether, without first taking such fugitive before the proper authorities of this state, and observing the requisitions of the statute applicable to such cases, such person can remove the fugitive from this state to that where the offense may have been committed.

1. A private person may lawfully arrest a felon convicted in the state, and convey him to an officer without a warrant, without incurring any responsibily, using no more delay in the detention than is necessary.

It is not doubted that a private person, without warrant, may, for the purpose of taking him before the proper officers, or of delivering him into their custody, arrest a felon. This is not only his right but his duty. But it goes no farther than the arrest and delivery up to the proper officers. He must make no unnecessary delay in delivering the offender into the custody of the law; if he does, he is guilty of a wrong to the latter, for which he may be held answerable in damages.

2. A plea justifying an arrest without warrant should aver that the plaintiff had committed a felony. (2 *Greenleaf*, sec. 100; *Wheaton's Selwyn*, 2 vol. 126.)

And in an action for trespass and false imprisonment, where the defendant, a private person without warrant, justifies upon the ground that he arrested and detained the plaintiff as a felon, he should alledge and prove, not only that he proceeded with due and proper dispatch to take him before the proper officer, or otherwise to deal with him according to law, but also that he was actually guilty of a felony. (*Greenleaf on Evidence*, 2d vol., sec. 100; *Wheaton's Selwyn*, 2d vol., 126.)

3. To justify an arrest by a private person, without warrant, it is necessary that the offense should have been committed within the jurisdiction

This right of private persons to arrest felons, for the purpose of bringing them to justice, has been recognized in England and this country for time immemorial. It grows of the allegiance and fidelity due from the citizen to his government, and is regarded as tending, when properly exercised, to ensure obedience to law, and conserve the public peace. But it is only where the offense has been committed with-

Botts, &c.
vs.
Williams.

of the govern-
ment where the
arrest is made.

in the jurisdiction of his own government that an arrest by a private person without warrant is allowable. We are aware of no principle or authority that recognizes the right of a citizen of one state, or government, to become the vindicator of the laws of another, and assume to arrest another person guilty of a violation of the laws of a foreign state, much less to remove such offender from the state where he may be found, and thus deprive him of the protection of its laws.

The right of a person to the protection of the law of the state or country where he may live is one that is recognized by all civilized nations. He cannot be deprived of such protection except in the mode prescribed by the law itself. A man may abide in this state as long as he chooses and no one, except by authority of law, has the right to remove him from it. It is said by Blackstone that, "no pow-on earth, except the authority of parliament can send any subject of England out of the land against his will, no, not even a criminal " And it may as truly be said here that no power on earth, except under and in pursuance of the laws of Congress, or of this state, can rightfully drive or remove a man from its territory. The *Constitution of the United States, art. IV, sec. 2nd*, provides that, "a person charged in any state with treason, felony, or other crime, who shall flee from justice and be found in another state, shall, on demand of the executive authority of the state from which he fled, be delivered up to be removed to the state having jurisdiction of the crime."

By an act of Congress, of 1793, to carry into effect the foregoing provision of the constitution, it is provided, "that whenever the executive authority of any state in the union or either of the territories north, west, or south, of the river Ohio shall demand any person as a fugitive from justice of the executive authority of any such state or territory to which such person shall have fled, and shall moreover produce the

copy of the indictment found or an affidavit made before a magistrate of any state or territory as aforesaid charging the person, so demanded, with having committed treason, felony, or other crime, certified as authentic by the governor or chief magistrate of the state or territory from whence the person so charged fled it shall be the duty of the executive authority of the state or territory to which such person shall have fled to cause him or her to be arrested and secured, and notice of the arrest to be given to the executive authority making such demand, or to the agent of such authority appointed to receive the fugitive, and to cause the fugitive to be delivered up to such agent, &c." (*Revised Statutes*, 118.)

The more effectually to carry into execution the same provision of the constitution, and, at the same time, to guard and protect the rights of her citizens the legislature of this state, in regard to the apprehension and detention of fugitives from justice from other states, enacted, in 1840, the following law:

"SEC. 1. That when any person shall have committed a crime in another state, the punishment whereof, in the state where the crime was committed, is capital, confinement in the penitentiary, or corporeal, and shall have fled to this state, it shall and may be lawful for any person apprehending such offender, to take him before some judge of a circuit court, whose duty it shall be to enquire into the truth of the charge or charges alledged against such prisoner; and if said judge, after hearing the evidence, shall be of opinion that the prisoner is guilty of the offense, or offenses, wherewith he may stand charged, he shall make an order in writing directing the sheriff, or some constable, to commit the accused to the jail of the county in which he was arrested, there to remain until demanded by the governor of the state in which the offense was committed: *Provided*, That persons arrested in the city of Louisville may be taken before the city court, and persons arrested in Lexington and Maysville may be taken be-

fore the police courts in said cities, instead of before the circuit judge, and be dealt with, in all respects, as if taken before a circuit court judge.

"SEC. 2. When the governor of the state where the offense was committed, shall demand the fugitive from justice of the governor of Kentucky, the governor of Kentucky shall issue his warrant to the sheriff of the county where such fugitive from justice may be confined, requiring said sheriff to deliver such fugitive from justice to such person or persons as may be designated or appointed to receive him by the governor of the state where the crime was committed.

"SEC. 3 When the governor of the state where the crime has been committed, shall fail, or refuse, to demand the fugitive from justice from the governor of Kentucky, and shall fail to appoint some person to receive said fugitive from justice, within sixty days from the time of confinement when the state where the offense was committed adjoins the state of Kentucky, or within ninety days from confinement when the state does not adjoin the state of Kentucky, it shall be lawful for the fugitive from justice to sue out a writ of *habeas corpus*, and shall be set at liberty by the judicial officers empowered to grant him the writ."

By the 4*th section* it is made the duty of the prosecutor to give immediate notice of the arrest and confinement of the prisoner to the governor of the state where the crime was committed, and to deposit in the hands of the proper officers their fees before it shall be compulsory upon such officers to arrest or confine the fugitive. And by the 5*th section* it is made "the duty of any justice of the peace upon application of the prosecutor, *and affidavit that the offense has been committed* in another state to issue his warrant directed to any constable or sheriff to apprehend such fugitive from justice as in other cases." (*3rd Statute Laws.*)

We have been thus particular in reciting the provisions of the foregoing act to show, that whilst the legislature of this state, in view of the provision of the federal constitution and act of Congress just recited, have made full and ample provision for their execution within the limits of Kentucky; the most commendable care has been manifested for the security and protection of persons within its jurisdiction against oppression and wrongs that might ensue from unlawful and unauthorized captures and removals against their will from this state upon unfounded accusations of felonies or acts made felonies in adjoining states.

4. To authorize the removal of one charged with the commission of a felony in another state, a copy of the indictment found against the accused must be produced, or an affidavit of guilt made out by the prosecutor, and the warrant of the governor predicated upon the requisition of the governor of he state where the offense is alledged to have been committed.

It will be seen from the foregoing laws that in no case can a fugitive from justice, from another state, be arrested in this, except upon the production of the indictment found against him in the state from which he may have fled, or upon affidavit made by the prosecutor that he has been thus guilty, and that after the arrest has been made, and a hearing had, before a judicial officer, it requires the intervention of the warrant of the governor of this state, predicated upon the formal requisition of the governor of the state where the offense may have been committed, to authorize the delivery and removal of a person from this commonwealth to another state as a fugitive from justice.

The plea tendered is wanting in several important respects as a justification, if the offense had been committed in Kentucky and the plaintiff not taken out of the state. But it wholly fails to show such facts as would warrant the apprehension and transportation of the plaintiff beyond the limits of the state as a fugitive from justice.

None of the prerequisites of the law authorizing such arrests are alledged to have been observed, when in order to justify such capture or transportation the plea should show a strict observance of all, and the defendant be required to prove it. The plea

was insufficient and the demurrer to it rightfully sustained.

With regard to the second ground, we are of opinion that it is tenable.

Although the declarations of Williams that he had committed a felony, in Ohio, did not justify his apprehension and transportation to that state, such declarations accompanied, as they were, with the statement that a reward had been offered for his apprehension, were admissible in mitigation of damages, as conducing to show that the defendants, in making the arrest were prompted by honest motives and no ill will to the plaintiff. And we think the court erred in excluding evidence of such declarations of the plaintiff from the jury.

The third and last ground is also deemed tenable.

The first instruction given at the instance of the plaintiff is objectionable, because it assumes to measure the character and extent of the trespass complained of, and thus far invades the province of the jury. The jury had to determine whether trespass was one of "enormity and magnitude," and assess damages accordingly. The court. however, by the instruction virtually informs them that such was its character.

The second instruction is likewise objectionable. It was obviously intended to caution the jury as to the consideration they should give to proof of confessions made by a party in the presence only of the witness who details them, when uncorroborated by other evidence. Its language however might tend to disparage the admissions or statements of the party satisfactorily proved, and is fairly susceptible of such construction.

A statement or admission of a party once proved is not only competent but convincing testimony against such party. But proof of such statement by a single witness, uncorroborated by other facts or evidence in the case should be received with caution. The caution should be applied, however, to the

5. The admissions of a plaintiff that he had been guilty of a felony in another state, are competent evidence in a suit by him against individuals for damages for arresting him and conveying him to that state for trial--in mitigation of damages even under the plea of not guilty.

6. It is error for the court in giving instructions to a jury to characterize the conduct of the parties by terms calculated to influence the jury in their assessment of damages, or to disparage testimony which has been permitted to go to the jury.

proof of the statement, and not the statement when proved.

For the errors indicated, the judgment, as to appellants, is reversed and cause remanded for a new trial as to them, and other proceedings consistent with this opinion.